**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00551-DJH-CHL**

**MARIKA GAVRE,**                                                                                  **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**[1]                            **Defendant.**

**REPORT AND RECOMMENDATION**

Before the Court is the Complaint (DN 1) of Plaintiff Marika Gavre ("Gavre"), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g). On May 6, 2021, Plaintiff filed her fact and law summary (DN 20) and in response, on August 4, 2021, the Commissioner filed her fact and law summary (DN 25). This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 19.) Therefore, this matter is ripe for review.

**I.     FINDINGS OF FACT**

On July 27, 2017, Gavre filed an application for Disability Insurance Benefits ("DIB"). (DN 18, at PageID # 193, 301.) Gavre claimed that she was disabled as of May 1, 2016 due to low back problems, severe headaches, pain in neck and shoulders that radiates to hands, and inability to sit or stand for long periods of time. (*Id.* at 379.) Gavre's application was denied initially on October 9, 2017, and on January 30, 2018, Gavre's application was again denied on reconsideration. (*Id.* at 203–04.) An Administrative Law Judge ("ALJ") conducted a hearing on Gavre's application on June 20, 2019. (*Id.* at 134–76.) During the hearing, the ALJ heard

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security in place of Andrew Saul, she is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Court will direct the Clerk to change the case caption to reflect the substitution.

testimony from Gavre, who was assisted by counsel, as well as vocational expert Michelle McBroom-Weiss. (*Id.*) In a decision dated July 15, 2019, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled, and in doing so, made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since May 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, cervical and lumbar; fibromyalgia; chronic pain syndrome; Tennis elbow syndrome, right; and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except can occasionally push/pull with bilateral upper extremities. Can occasionally climb ramps/stairs, no climbing ladders/ropes/scaffolds. Can frequently balance; occasionally stop, kneel, and crouch, no crawling. Must avoid concentrated exposure to extreme cold and vibration. Can tolerate moderate noise levels. No work with or near dangerous and moving type of equipment or machinery and unprotected heights. Can understand, remember and apply simple instructions and tasks. Can interact frequently with supervisors, co-workers and the general public. Can maintain concentration, persistence and pace for 2 hours at a time over an 8-hour work day. Can adapt to routine changes in a work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 3, 1970 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged onset date (20 CFR 404.1563).

> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2016, through the date of this decision (20 CFR 404.1520(g)).

(*Id.* at 115–25.)

On July 23, 2019, Gavre filed a request for review, and on June 3, 2020, the Appeals Council denied her request, at which point, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 78, 291.)

## II.   CONCLUSIONS OF LAW

### A. Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir.

2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520 (2020). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 404.1509 (2020).

>answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Gavre's Contentions

Gavre contends that the ALJ's RFC determination is unsupported by substantial evidence for two reasons. First, she argues that the ALJ failed to follow the applicable rules for considering opinion evidence in the record and that the ALJ's conclusions regarding the persuasiveness of the opinion of Vincent T. Fry, MD ("Dr. Fry") are unsupported by the record. (DN 20-1, at PageID # 1625–32.) Second, she argues that the ALJ failed to follow the applicable rules for assessing her subjective complaints and that the ALJ's conclusions regarding the supportability of her complaints are unsupported by the record. (*Id.* at 1633–36.)

#### 1. Opinion Evidence

Gavre contends that the ALJ "failed to properly evaluate the opinion" of Dr. Fry. (DN 20-1, at PageID # 1623.) The new regulations for evaluating opinion evidence are applicable to Gavre's case because he filed her application after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2020) ("For claims filed on or after March 27, 2017, the rules in this section apply."). Under the new regulations an ALJ will not "defer or give any specific evidentiary weight, including

5

controlling weight, to any medical opinion(s)" in the record regardless of its source.[3]  20 C.F.R. § 404.1520c(a).  Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c).  The regulation provides that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . ."  20 C.F.R. § 404.1520c(a), (b)(2).  However, the regulation states that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[4] specialization, and other factors in every case.[5]  20 C.F.R. § 404.1520c(b)(1)-(2).

On November 7, 2017, Dr. Fry completed a form titled "Physical Capacities Evaluation (for Physician's use)" on which he marked with a checkmark or "x" whether Gavre had limitations in numerous areas related to her physical functioning and also listed Gavre's diagnosis, prognosis, and symptoms.  (DN 18, at PageID # 1336–37.)  Among the physical limitations prompted on the form, Dr. Fry marked that in an eight-hour workday, Gavre could sit and stand/walk "less than two (2) hours," frequently lift up to five pounds and occasionally lift between five and twenty pounds,

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 404.1527(c)(2) (2020).

[4] In assessing this factor, the regulation requires an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[5] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. § 404.1520c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  *Id.*

and occasionally climb and balance and never stoop, crouch, kneel, or crawl. (*Id.* at 1337.) Below the form's question, "Are the following PHYSICAL FUNCTIONS affected by the impairment?", Dr. Fry affirmatively marked reaching, handling, and pushing/pulling. (*Id.*) Dr. Fry affirmatively marked the question, "is it medically reasonable to expect that they may sometimes need to either sit quietly to rest or to lie down at unpredictable intervals during work shifts?" (*Id.*) Dr. Fry predicted that this would happen an average of two times per day. (*Id.*) Below the question, "On average, how often do you anticipate that the patient's impairments or treatment would cause the patient to be absent from work?", Dr. Fry affirmatively marked "More than 3 times a month." (*Id.*)

The ALJ found Dr. Fry's opinion "somewhat persuasive" but also concluded that "some of his findings are out of proportion to the medical record and are based mainly on the claimant's subjective complaint." (*Id.* at 123.)  Gavre argues that this analysis is facially erroneous because it "provides no insight into her reasoning regarding the supportability and consistency factors." (DN 20-1, at PageID # 1630.) Gavre further argues that the ALJ failed to explain why she did not credit evidence that is favorable to Dr. Fry's opinion. (*Id.*) Finally, Gavre disputes the ALJ's assertion that Dr. Fry's opinion depended on her subjective complaints, arguing that "Dr. Fry consistently documented positive findings on examination as did [Gavre]'s various providers including her orthopedic and pain management specialists." (*Id.*) In response, the Commissioner argues that the ALJ complied with relevant regulations and sufficiently explained her finding that Dr. Fry's opinion was only somewhat persuasive. (DN 25, at PageID # 1654–57.) The Commissioner asserts that the ALJ "explained that some of Dr. Fry's findings were out of proportion to the medical record, thus being inconsistent with the objective medical findings to some extent, and also appeared to be supported by [Gavre]'s subjective complaints (thus being not supported in some respects)." (*Id.* at 1655.) The Commissioner argues that "the ALJ's thorough

review of other examination findings and evidence in the record shine a light on the lack of consistency between some of Dr. Fry's opined limitations and the objective medical evidence," and alleges that Dr. Fry's opinions "were not consistent with other examinations in the record that the ALJ referenced." (DN 25, at PageID # 1656.)

Under the old regulations, the ALJ was required to provide "good reasons" for the weight it assigns the treating-source opinion. *Cole*, 661 F.3d at 937 (citing 20 C.F.R. § 404.1527(d)(2)). The Sixth Circuit required that the reasons were "sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating-source opinion and reasons for that weight." *Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) (citing *Cole*, 661 F.3d at 938 and Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the guidelines set forth in the new regulations. 20 C.F.R. § 404.1520c(b). *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). District courts applying the new regulations both within this circuit and throughout the country consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (reported case); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a

8

coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions"); *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) ("the ALJ should consider the relevant factors, and specifically explain how she considered the supportability and consistency factors as to each medical opinion per 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2)"); *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) ("Although the [new] regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.' ") (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a) & (b)(1)); *Jones v. Saul*, No. 2:19-cv-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("The new regulation does not allow the ALJ to forego articulation of their reason or reasons altogether; rather, it provides specific articulation requirements.") (internal citations omitted).

In *Hardy*, the court reviewed the plaintiff's objection to a magistrate judge's report and recommendation finding that the ALJ's RFC determination was supported by substantial evidence. 2021 WL 3702170, at *1–3. The plaintiff challenged the ALJ's "concise one-sentence rejections of [two] treating source opinions" because the "ALJ's analysis did not cite specific medical source notes that supposedly contradicted the treating source assessments, [and] it did not identify which specific observation by the treating sources were discounted by the ALJ." *Id.* at *3. The court began its analysis clarifying that "[t]he new regulations 'set forth a "minimum level of articulation"

9

to be provided in determinations and decisions, in order to "provide sufficient rationale for a reviewing adjudicator or court." ' " *Id.* at *4 (quoting *Warren*, 2021 WL 860506, at *8 and 82 Fed. Reg. 5844-01 (2017)). The court noted that the ALJ rejected the two treating source opinions as follows: "Dr. Carey's form statement was unpersuasive; it lacked support in Dr. Carey's own contemporaneous treatment documentation or elsewhere in the extensive record"; and "Dr. Trostinkaia's form statement was overly sympathetic to claimant and otherwise unpersuasive. As detailed above, Dr. Trostinkaia's clinical examination reports include few musculoskeletal findings, and none supporting effectively requiring claimant to lie down for a significant portion of the work day." *Id.* at *4–5. The court recognized that the record contained evidence that was inconsistent with the medical opinions, much of which was detailed throughout the ALJ's decision, but the court nonetheless found that the ALJ's medical opinion analysis did not comply with the regulations. *Id.* at *5.

> When the ALJ rejected the opinions of both physicians, she did not refer to any of these medical findings in the record. She did not explain why she chose to accept the findings that undercut the opinions and to reject the findings that supported them. For Dr. Trostinkaia, the ALJ gave a terse reason for rejecting the opinion that the plaintiff had to take breaks to lie down during the workday, but there was no mention of the other limitations Dr. Trostinkaia found that were inconsistent with sedentary work. *See* 20 C.F.R. § 404.1567(a) (2002); Social Security ruling (SSR) 83-10 (defining sedentary work as requiring a worker to stand and walk "no more than 2 hours of an 8-hour work day, and sitting should generally total approximately 6 hours of an 8-hour work day"). There was no discussion — no "articulation" — of the supportability and consistency factors.
>
> The magistrate judge described the ALJ's explanation as "brief" and "limited," but she believed that the ALJ complied with the regulations because of the preceding "extensive summarization of the record." However, where that summary included both supportive and contradictory information, it does little to explain the ALJ's reasoning or to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I.*, 2021 WL 860506, at *8.

10

> . . .
>
> > The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation."

*Id.* at *5–6.

The undersigned finds that *Hardy* is instructive. Here, as in *Hardy*, the ALJ dismissed in part a medical opinion with a cursory, one-sentence analysis. (DN 18, at PageID # 123.) The ALJ's conclusion that "some of [Dr. Fry's] findings are out of proportion with the record" does not identify which findings are unsupported nor the specific medical evidence that undermines them. (*Id.*) *Cf. Howard v. Comm'r of Soc. Sec.*, No. CV 20-111-HRW, 2021 WL 3271341, at *4 (E.D. Ky. July 30, 2021) ("The ALJ cited specifically to the record and found that neither opinion was consistent with or supported by it."); *Carrino v. Comm'r of Soc. Sec.*, No. CV 20-380-HRW, 2021 WL 2895181, at *3 (E.D. Ky. July 9, 2021) ("The ALJ considered this opinion but found it unpersuasive because it was not consistent with the other evidence in the record. The ALJ specifically noted that the pertinent mental health treatment Plaintiff received had been conservative."). The ALJ's statement that some of Dr. Fry's findings "are based mainly on the claimant's subjective complaint" does not provide any additional clarity as to how the ALJ assessed the reliability and supportability of each of his findings, especially given that Dr. Fry's entire source statement purported to be "based on [his] clinical evaluation of [Gavre] and other test results." (DN 18, at PageID # 1336) (emphasis removed). While the Commissioner notes that Dr. Fry's source statement was a "check-box format" and identifies medical evidence in the record that she claims to support the ALJ's conclusion, "the Commissioner's *post hoc* rationalization of how [the] ALJ [] could have applied the factors to each medical opinion . . . does not cure this

11

deficiency." *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021), *report and recommendation adopted*, No. 3:20-CV-410, 2021 WL 5235326 (S.D. Ohio Nov. 10, 2021). The Commissioner is merely speculating as to how the ALJ considered the record; the undersigned declines to do the same. *See Hardy*, at *6 ("It is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented.").

An ALJ's procedural error is grounds for remand. *Id.* ("The Court's obligation to review the ALJ's decision includes whether the ALJ applied the correct legal standards *and* whether the findings of the ALJ are supported by substantial evidence.") (emphasis in original) (internal quotation marks and citations omitted). *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("A procedural right must generally be understood as 'substantial' in the context of this statement when the regulation is intended to confer a procedural protection on the party invoking it."). Remand is necessary "unless it is harmless error." *Thaxton*, 815 F. App'x at 960 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F. App'x 708, 723 (6th Cir. 2014)).

Under the prior regulations, the Sixth Circuit recognized three situations where an ALJ's procedural error in considering a medical source opinion was harmless. *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018). These situations are "(1) where 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it,' (2) where 'the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion,' and (3) 'where the Commissioner has met the goal of . . . the procedural safeguard of reasons.'" *Id.* (quoting *Wilson*, 378 F.3d at 547). However, "'[a] procedural error is not made harmless simply because [the claimant] appears to have . . . little chance of success on the merits." *Id.* (quoting *Wilson*, 378 F.3d at 547).

Upon review, the undersigned finds that the first category of harmless error does not apply to the ALJ's consideration of Dr. Fry's opinion, as his source statement was not patently deficient. *See Smith v. Saul*, No. 18-1251-TMP, 2020 WL 259556, at *4 (W.D. Tenn. Jan. 17, 2020) (observing that a physician opinion is only patently deficient in "exceptional circumstances [where] the record is entirely inconsistent with a treating physician's opinion, or when a treating physician's opinion is accompanied by no explanation, or appears to be half-finished") (citations omitted); *Butcher v. Comm'r. of Soc. Sec.*, 1:20-CV-01230-DCN, 2021 WL 1878120, at *19 (N.D. Ohio May 3, 2021), *report and recommendation adopted*, 1:20 CV 1230, 2021 WL 1858367 (N.D. Ohio May 10, 2021) ("checklist opinion notwithstanding," it was a harmful error to reject medical opinion that was supported by the record without addressing the consistency and supportability factors). The second category does not apply notwithstanding the fact that, as the Commissioner notes, "the ALJ accepted that Plaintiff had some limitations consistent with or more restrictive than Dr. Fry's opinion." (DN 25, at PageID # 1655.) For example, the ALJ did not adopt Dr. Fry's standing and sitting limitations nor did her RFC include any such limitations beyond restricting Gavre to sedentary work. Dr. Fry's standing and sitting limitations were not entirely inconsistent with the record, including clinical findings consistent with restrictive sitting and standing limitations. (*See, e.g.*, DN 18, at PageID # 1575–1600.) Finally, the undersigned finds that the third category of harmless error does not apply. The ALJ's analysis of Dr. Fry's opinion provided no explanation of, or even reference to, the 20 C.F.R. § 404.1520c(b) factors. For this reason, the undersigned "cannot engage in meaningful review of the ALJ's decision . . . ." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). *See Butcher*, 2021 WL 1878120, at *19 (finding that the ALJ's failure to articulate supportability and consistency factors in rejecting medical opinion that was consistent with the record was not harmless); *Todd v. Comm'r of Soc.*

*Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021) (finding that the ALJ's failure to properly articulate the consistency factor was not harmless).

Because the ALJ's explanation for why she found Dr. Fry's opinion only "somewhat persuasive" was inadequate, the undersigned will recommend that this matter be remanded so that the ALJ can provide a more appropriate and detailed explanation.

### 2. Gavre's Subjective Complaints

Gavre contends that the ALJ "failed to properly consider [Gavre]'s subjective complaints." (DN 20-1, at PageID # 1634.) Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing *Walters*, 127 F.3d at 531; *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)).[6]

---

[6] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

Gavre notes that the ALJ's decision includes the following standard-form language that is typically included in adverse disability decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(DN 20-1, at PageID # 1633; DN 18, at PageID # 120.) Gavre alleges that "as the ALJ did not actually provide any further explanation for her assessment regarding Plaintiff's subjective complaints, this boilerplate statement cannot provide sufficient explanation." (DN 20-1, at PageID # 1633.) Specifically, Gavre argues that "there is no evidence the ALJ considered any of the factors in determining the supportability of Plaintiff's subjective complaints." (*Id.*, at PageID # 1634.)

Putting sufficiency aside, it cannot be seriously claimed that the ALJ's decision shows *no* consideration of the 20 C.F.R. § 404.1529(c)(3) factors. In the decision, the ALJ's surveyed Gavre's subjective complaints dating back to June 2016, summarizing Gavre's function reports, pain, seizure, and fatigue questionnaires, third party function reports, and Gavre's hearing testimony. (DN 18, at PageID # 119.) The ALJ referenced the portions of Gavre's testimony that Gavre suggests was not considered. (*Compare* DN 20-1, at PageID # 1635, *with* DN 18, at PageID

---

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037–38 (6th Cir. 1994).

# 119, 121.) The ALJ's decision also dedicates three-pages to surveying Gavre's medical records, including diagnostic and treatment history, clinical findings, and Gavre's reports to healthcare providers. The ALJ comprehensively summarized the record and highlighted evidence both supporting and contradicting Gavre's subjective complaints. The ALJ concluded:

> The record documents claimant's severe complaints. Consideration is given to these impairments as reflected in the residual functional capacity. However, the functional restrictions alleged by the claimant are not entirely consistent with the evidence as they are found to be disproportionate to the clinical findings. The claimant's subjective complaints are accepted, as far as they are supported by the objective evidence and by the record as a whole. Her impairments are limiting, however, not disabling. The record is simply not consistent with the claimant's allegation of disability.

(DN 18, at PageID # 124.)

Upon review, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence. "Although the Court cannot say that the articulation here represents a model that future disability decisions should emulate, it is sufficient to satisfy the Court that the ALJ did consider the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (citing *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). Therefore, the undersigned finds no basis for reversal of the ALJ's adverse credibility finding.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's final decision be **VACATED AND REMANDED** for further proceedings consistent with this opinion.

Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the Defendant in place of Andrew Saul, and the Clerk of Court is directed to change the case caption to reflect the substitution.

December 28, 2021

cc: Counsel of record

Colin H Lindsay, Magistrate Judge
United States District Court

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).